UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | |
| TITUS TRANSPORTATION, LP, | § § § | CASE NO. 10-42202 |
| DEBTORS. | § § | Chapter 11 |
| | § § | Judge Brenda T. Rhoades |
| | § § § | HEARING DATE: JULY 7, 2010<br>HEARING TIME: 11:00 A.M. |

**DEBTOR'S EMERGENCY MOTION PURSUANT
TO 11 U.S.C. §§ 363 AND/OR 364 FOR INTERIM AND FINAL ORDERS
AUTHORIZING (I) DEBTOR-IN-POSSESSION FINANCING AND/OR
(II) LIMITED USE OF CASH COLLATERAL AND GRANTING ADEQUATE
<u>PROTECTION PURSUANT TO BANKRUPTCY RULE 4001(d)</u>**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

<u>**NOTICE OF HEARING**</u>

PLEASE TAKE NOTICE THAT AN EMERGENCY HEARING ON THIS MOTION IS SET FOR WEDNESDAY, JULY 7, 2010 AT 11:00 A.M., BEFORE THE HONORABLE BRENDA T. RHOADES, UNITED STATES BANKRUPTCY JUDGE, 660 NORTH CENTRAL EXPRESSWAY, SUITE 300B, PLANO, TEXAS 75074.

Titus Transportation, LP, debtor and debtor-in-possession ("Titus Transportation" or the "Debtor") files this Emergency Motion Pursuant to 11 U.S.C. §§ 363 and/or 364 for Interim and Final Orders Authorizing (I) Debtor-in-Possession Financing and/or (II) Limited Use of Cash Collateral and Granting Adequate Protection Pursuant to Bankruptcy Rule 4001(d) (the "Motion") and in support thereof would show the Court as follows:

1. This Court has jurisdiction to consider the subject matter of the Motion pursuant to

28 U.S.C. § 1334, and this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) (G).

2. This case was commenced by the filing of a voluntary petition under Chapter 11 of the Bankruptcy Code on July 2, 2010 (the "Petition Date").

3. No trustee or examiner has been appointed. An official committee of unsecured creditors has been established.

4. As of the Petition Date, the Debtor was indebted to Marquette Transportation Finance, Inc. ("Marquette") pursuant to certain pre-petition loan agreements, copies of which are attached to the proposed Stipulation and Agreement attached hereto as Exhibit "A".

5. Marquette and Debtor have have engaged in good faith, arms-length negotiations regarding the terms of post-petition credit to be extended by Marquette to the Debtor, and appropriate adequate protection for Marquette's interest in the Debtor's assets, subject to this Court's approval. To that end, the Debtor and Marquette have reached an agreement as set forth in the Stipulation and Agreement attached hereto as Exhibit "A."

6. The Debtor believes that the terms of the parties' agreement as set forth in the Stipulation and Agreement are fair and reasonable and in the best interests of the estate. Pursuant to Bankruptcy Rule 4001(d) and applicable local rules, the Debtor requests that this Court grant this Motion, thereby approving the Stipulation and Agreement, and enter the proposed Agreed Order submitted herewith.

WHEREFORE, PREMISES CONSIDERED, the Debtor requests that the Court grant this Motion, approve the Stipulation and Agreement, enter the proposed Agreed Order, and grant such other and further relief as may be just and equitable under the circumstances.

DATED: July 2, 2010

Respectfully submitted,

**WRIGHT GINSBERG BRUISLOW P.C.**

By: _/s/ Paul B. Geilich_
    Frank J. Wright
    Texas State Bar No. 22028800
    Paul B. Geilich
    Texas State Bar No. 07792500
    C. Ashley Ellis
    Texas State Bar No. 00794824

600 Signature Place
14755 Preston Road
Dallas, Texas 75254
Telephone: (972) 788-1600
Facsimile: (972) 239-0138

**PROPOSED COUNSEL FOR THE DEBTOR, TITUS TRANSPORTATION, LP**

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on July 2, 2010, a true and correct copy of the foregoing Motion was served via the ECF system of the Bankruptcy Court on the persons named below via email and/or certified mail and/or Federal Express, and also served via first class United States mail, postage prepaid on each of the parties on the attached service list.

                                          _/s/ Paul B. Geilich_
                                          Paul B. Geilich

I:\9500s\9543\Pleadings\DIP - Motion revised.wpd

MOTION FOR APPROVAL OF STIPULATION AND AGREEMENT WITH MARQUETTE TRANSPORTATION FINANCE PURSUANT TO BANKRUPTCY RULE 4001 (d)

PAGE 3

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| TITUS TRANSPORTATION, LP, | § § | Case No. |
| | § | Chapter 11 |
| DEBTOR. | § § § | |
| | § | Hearing Set for: |
| | § | July , 2010 at |

## STIPULATION AND AGREEMENT REGARDING DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 363 AND/OR 364 FOR INTERIM AND FINAL ORDERS AUTHORIZING (I) DEBTOR-IN-POSSESSION FINANCING AND/OR (II) LIMITED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

THIS STIPULATION AND AGREEMENT (the "Stipulation") REGARDING DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 363 AND/OR 364 FOR INTERIM AND FINAL ORDERS AUTHORIZING (I) DEBTOR-IN-POSSESSION FINANCING AND/OR (II) LIMITED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION (the "Motion") is entered into by and among TITUS TRANSPORTATION, LP, the Debtor and Debtor-in-Possession (the "Debtor" or "DIP" or "Borrower") in the above-captioned Chapter 11 case (the "Bankruptcy Case"), and Marquette Transportation Finance, Inc. ("Marquette" or "Lender"). Accordingly, Debtor and Lender stipulate as follows:

### RECITALS:

1. On July 2, 2010 (the "Petition Date"), Debtor filed a voluntary petition (the "Petition") for reorganization under Chapter 11 of the United States Code (the "Code"). The Debtor continues to operate their businesses as Debtor-in-possession pursuant to sections 1107(a) and 1108 of the Code. No trustee, examiner, or official committees have been appointed in the Bankruptcy Cases.

2. As of the Petition Date, Borrower was indebted to Lender by reason of the Advances in the principal amount of approximately $_____, plus those costs and expenses which Lender incurred prior to the Petition Date, and for which Lender is entitled to recover pursuant to the Pre-Petition Loan Documents. All amounts referred to in this paragraph are collectively referred to herein as the "Pre-Petition Indebtedness". Debtor is obligated to repay


EXHIBIT A

the Pre-Petition Indebtedness according to the terms of the Pre-Petition Documents, as defined below. Copies of the Pre-petition Documents, are attached as Group Exhibit A.[1]

3. The Debtor is seeking to incur debt by borrowing from Marquette post-petition, under the same terms and conditions as they borrowed from Marquette prepetition (the "DIP Financing"). Without the DIP Financing, the Debtor will not have the funds necessary to operate their business, maintain assets, or pay employees, payroll taxes, insurance, utilities, fuel suppliers and other vendors, overhead, lease expenses and other expenses required for the reorganization of the Debtor's businesses and to maximize the value of the Debtor's estate.

4. Pursuant to Section 364(a) and 364(b) of the Code, Debtor has attempted, and is unable to obtain either unsecured credit or unsecured credit allowable under Section 503(b)(1) of the Code as an administrative expense in the amounts and on as favorable terms as are being agreed to by Marquette.

5. Notice of this Stipulation is being given concurrently with the filing hereof to the Office of the United States Trustee, each of the lenders listed herein and their counsel where known, and each of the Debtor's twenty (20) largest unsecured creditors (with exhibits only upon request, due to size) by facsimile and email where known, and otherwise by first-class mail, postage prepaid. No official committee or trustee has been appointed in the Bankruptcy Cases. Accordingly, the Debtor submits, under the circumstances, and pursuant to Bankruptcy Rules 4001(c) and 4001(d)(4), no further or other notice is necessary, other than with respect to a final hearing on this matter when docketed by the Court.

6. Lender has indicated a willingness to extend credit to Debtor, but only under the terms and conditions set forth in this Stipulation. Debtor believes that, under the circumstances, the following terms and conditions are a fair and reasonable response to Debtor's request for financial assistance.

7. Entry of an interim order authorizing Debtor to enter into the agreements contemplated by this Stipulation will minimize disruption of Debtor as a "going concern," will increase the possibilities for a successful reorganization, and, therefore, is in the best interests of the estates and their creditors. Debtor represents that no financing is available on terms and conditions more favorable than offered by Lender.

8. The financing arrangements pursuant to which Advances and other financial accommodations will be made and extended to the Debtor has been negotiated at arms-length and in "good faith" (within the meaning of Section 364(e) of the Code) by and between Lender and the Debtor; accordingly, Lender, in making advances pursuant to this Stipulation, is entitled to the protection described in Section 364(e) of the Code.

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Pre-Petition Documents.

9. The Debtor and Lender desire the authorization of the Court to enter into the agreements contemplated by this Stipulation, and, therefore, further stipulate to the Court as follows:

AGREEMENT:

1. Debtor may continue to request Advances and seek other financial accommodations from Lender (collectively, the "<u>Post-Petition Indebtedness</u>") on the terms set forth herein.
   Lender shall be permitted, in Lender's sole discretion, to make Advances to Debtor. Debtor is authorized to obtain loans and other financial accommodations from Lender in an amount up to 90% of the Qualified Receivables. Notwithstanding the foregoing, the maximum amount of Advances required to be made by Lender, including both the Pre-Petition Indebtedness and Post-Petition Indebtedness, to Borrower shall not exceed $3,500,000.00, with not more than $505,00.00 of delivered but unbilled accounts at any time. Provided there are sufficient Qualified Receivables to support an Advance, for accounts owing by Kroger Corporation and Aldi, Inc., the advance rate shall be 70% upon delivery of shipments to such entity and an additional 20% upon the actual billing for the accounts. Provided there are sufficient Qualified Receivables to support an Advance, the advance rate for all other delivered but unbilled accounts shall initially be the same as the Kroger and Aldi accounts. On and after October 1, 2010, all accounts other than Kroger and Aldi must be both delivered and billed to be considered as a Qualified Receivable for any Advance.

2. All of the Pre-Petition Loan Documents are deemed and agreed to be, and shall be construed and considered to be, agreements by and between the Debtor and Lender with respect to the Post-Petition Indebtedness. To the extent not inconsistent with the terms of this Stipulation, the terms and conditions of the Pre-Petition Loan Documents are incorporated herein and made a part hereof by this reference, are hereby ratified and approved, shall continue in full force and effect with respect to the Pre-Petition Indebtedness, shall govern the Post-Petition Indebtedness and shall be deemed and held to be enforceable as against the Debtor. Accordingly, to the extent not inconsistent with this Stipulation, Debtor shall perform pursuant to, and comply with, the terms of the Pre-Petition Loan Documents with respect to the Post-Petition Indebtedness and shall obtain financial accommodations from the Lender as Post-Petition Indebtedness in accordance with the terms and provisions of the Pre-Petition Loan Documents. All Post-Petition Indebtedness and all other advances and other financial accommodations extended to Debtor by Lender, including without limitation, the Pre-Petition Indebtedness, shall be subject to the fee schedule, terms of payment, limitations and other terms and conditions set forth in the Pre-Petition Loan Documents, except as expressly modified hereby.

3. After October 8, 2010, no portion of the Post-Petition Indebtedness shall be used to fund fees or expenses incurred by any entity, including the Debtor and professionals retained by Debtor, in: (1) preventing, hindering or delaying Lender's enforcement or realization upon any of the Pre-Petition Collateral or Post-Petition Collateral (as defined below) once a post-petition event of default has occurred, (2) [intentionally deleted] (3) incurring indebtedness without Lender's consent or by order of the Court, or (4) objecting to or contesting in any

manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Pre-Petition Indebtedness or the Post-Petition Indebtedness or any liens or security interests with respect thereto or any other rights or interests of Lender from and after October 8, 2010, or in asserting any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Code, against Lender. Nothing herein shall be construed as consent to the allowance of any fees, costs or expenses of the professionals retained by Debtor or shall affect the right of Lender to object to the allowance and payment of such fees, costs or expenses.

4. The liens and security interests granted to Lender by Borrower hereunder shall constitute first, paramount and valid liens upon and security interests in the following assets of Borrowers (the "Post-Petition Collateral"):

   "all present and future Accounts, all of Borrower's other accounts; chattel paper, instruments, General Intangibles, and documents whether or not considered an Account under the terms of this Agreement; all assets (but excluding all titled vehicles owned by the Debtor) including, records, inventory, non-titled equipment of every kind and description; furniture and fixtures; Deposit Accounts; money; investment property; letters of credit; notes; tax refunds and insurance proceeds, all as defined in the Uniform Commercial Code and all proceeds thereof."

5. Nothing contained in this Section shall be deemed to grant to Lender a lien on any titled tractor or trailers owned by any of the Debtor and subject to the interests of any other secured party.

6. Proceeds or payments received by Lender with respect to the Pre-Petition Collateral upon which Lender had security interests or liens on the Filing Date shall be applied by Lender as follows:

   A.  first, to Pre-Petition Indebtedness consisting of accrued and accruing, interest, attorney fees, costs and expenses;

   B.  next, to Pre-Petition Indebtedness related to the Advances and consisting of principal; and

   C.  last, to Post-Petition Indebtedness, including all accrued and accruing interest, attorney fees, costs and expenses, then principal reduction of the Post-Petition Indebtedness.

7. Proceeds or payments received by Lender with respect to the Post-Petition Collateral arising after the date of the Petition shall be applied by Lender to the Post-Petition Indebtedness as follows:

   A.  first, to all accrued and accruing attorney fees, costs and expenses;

B. last, to reduce the outstanding principal balance of the Post-Petition Indebtedness.

8. "Permitted Liens" shall mean liens held by third parties to the extent such liens were valid, perfected and non-avoidable liens having had priority over the Pre-Petition Liens as of the Petition Date. In addition, certain third parties may have liens which are junior to the interests of Lender (the "Junior Liens"). As set forth in paragraph 13 below, to the extent of the Debtor's use of cash collateral, all Junior Lien holders with valid liens existing as of the Petition Date, [2] shall be granted a replacement lien on the Post Petition Collateral to the extent of any diminution in the value of its claim as a result of Debtor's use of cash collateral. All liens granted to Junior Lien holders, shall at all times be subordinate to the liens and claims of Lender granted herein or the under the Pre-Petition Document.

9. Upon entry of a Final Order approving the terms of this Agreement, in consideration for Lender's performance hereunder, the surcharge provisions of Section 506(c) of the Code and the enhancement of collateral provisions of Section 552 of the Code shall not be imposed upon Lender or its collateral, unless prior to incurring the cost or expense Lender provides written waiver for the cost or expense, or prior to incurring the expense the Debtor obtains a separate order permitting the cost or expense to be used as a surcharge against Lender or its collateral. If no objection is made to the validity, extent or priority of Lender's security interests in, and liens upon, the Pre-Petition Collateral by October 8, 2010, however, then without the need for either the actual adjudication of the Court or for the entry of any separate order, Lender's security interests in, and liens upon, the Pre-Petition Collateral shall be automatically deemed to be first in priority, valid and enforceable. Notwithstanding the foregoing, Lender shall not object to the DIP funding $75,000.00 each month, up to an aggregate amount of $750,000.00 for professional fees for DIP's counsel, any statutory committee appointed in this case and for fees to pay the quarterly payments due to the United States Trustee (the "Professional Fee Carve Out"). Upon DIP actually funding the Professional Fee Carve Out, Lender shall waive any claim or interest in the Professional Fee Carve Out whether arising by way of Lender's liens, administrative expense claims or otherwise, provided however, until Lender has been paid in full, no portion of the Professional Fee Carve Out may be used in connection with claims or actions adverse to the Lender or the Lender's interests in the Pre-Petition Collateral or Post-Petition collateral, or any of the rights granted to the Lender pursuant to this Agreement, including, without limitation; (i) any action at any time, whether before or after the termination of this Agreement, to challenge the extent, validity, priority, enforceability or perfection of the pre-

---

[2] Nothing contained in this Stipulation constitutes an admission or waiver of any fact, claim, or defense related to the Junior Liens or the claims or security interests any such lenders assert against property of the estate, or the nature, extent, validity, or priority of such lenders' asserted security interests, or any other matter with respect to the lenders mentioned herein, other than Marquette. This Stipulation is not intended to interrupt, extend or elevate post-petition any prepetition liens asserted as of the Petition Date. Likewise, failure to list or mention any purported lessor herein, does not constitute an admission that any lease between the Debtor and a third party lessor is a true lease and not a disguised financing arrangement. This Stipulation is not intended to interrupt, extend or elevate post-petition any prepetition liens asserted as of the Petition Date.

petition liens, Pre-Petition Indebtedness, or the amount of the Lender's other claims against the Debtor or DIP; or (ii) any attempt to take any action which would be an Event of Default hereunder.

10. Notwithstanding the terms of this agreement and Stipulation, any party-in-interest shall have until October 8, 2010, to object to the validity, extent and priority of Lender's security interests in, and liens upon, the Pre-Petition Collateral. If no objection is made to the validity, extent or priority of Lender's security interests in, and liens upon, the Pre-Petition Collateral by such date, however, then without the need for either the actual adjudication of the Court or for the entry of any separate order, Lender's security interests in, and liens upon, the Pre-Petition Collateral shall be automatically deemed to be first in priority, valid and enforceable.

11. Upon entry of an Order authorizing Debtor to enter into the agreement set forth in this Stipulation, the security interests and liens granted to Lender by virtue of this agreement shall be deemed to continue to be first, valid and perfected as against all third parties, without regard to applicable federal, state or local filing and recording statutes, <u>nunc pro tunc</u> as of the Petition Date and without further action of any party, including Lender; provided, that Lender may, but need not, take such steps as it deems desirable and applicable to comply with such statutes, and all financing statements which are filed listing Debtor as "debtor" and Lender as "secured party," and all liens and security interests in favor of Lender, shall be deemed to have been filed and the security interests and liens evidenced thereby shall be deemed perfected <u>nunc pro tunc</u> as of the time and date of the filing of the Petitions.

12. To further evidence the Post-Petition Indebtedness, the creation of Lender's security interests in and liens upon the Post-Petition Collateral and the other terms and conditions of the financing arrangement contemplated hereby, Debtor hereby agrees to (but at Lender's option need not) execute and deliver to Lender the following (collectively, the "<u>Post-Petition Documents</u>"), in form and substance satisfactory to Lender:

    a. Agreements, instruments and documents in substantially the form of the Pre-Petition Documents;

    b. All such financing statements, notices, schedules, security agreements, assignments, consents, agreements, instruments and documents necessary or required to evidence loans, to consummate the terms and provisions of this Stipulation and the Post-Petition Documents and to perfect the liens and security interests to be given to Lender pursuant thereto;

    c. A copy of the resolutions of the Shareholders and Board of Directors of Debtor authorizing the execution, delivery and performance of this Stipulation, the Post-Petition Documents, and the other matters contemplated hereby certified by the Secretary of Debtor, together with such corporate action as Lender may request; and

    d. Such other agreements, instruments and documents from Debtor or third

parties as Lender or its counsel shall require and such other orders of the Bankruptcy Court and other courts, with respect to Debtor or third parties, as Lender or its counsel shall require. Until and unless the Post-Petition Documents are executed, the terms and conditions of the Pre-Petition Documents shall govern the Post-Petition Indebtedness, except to the extent otherwise provided herein or modified hereby.

13. All Post-Petition Indebtedness owing by Debtor to Lender, and the liens and security interests of Lender in the Post-Petition Collateral, shall at all times be senior to the rights of Debtor in this proceeding under the Code, except for the amounts funded for the Professional Fee Carve Out, and shall have priority in all respects under the provisions of Sections 364(c)(1) and 364(c)(2) of the Code over all administrative expenses incurred in this Chapter 11 reorganization proceeding of the kind specified in Section 503(b) or 507(b) of the Code whether incurred or arising prior or subsequent to the date of the Petition, the entry of an Order authorizing Debtor to enter into this Stipulation or a conversion of this case pursuant to Section 1112 of the Code or in any other proceeding related hereto, and whether incurred pursuant to Section 726(b) of the Code or otherwise. No claims, whether incurred during this Chapter 11 case or in any converted case under Chapter 7, shall be prior to or on a parity with the claim of Lender against Debtor arising out of the Post-Petition Indebtedness, or with Lender's security interests in, and liens upon, the Post-Petition Collateral, and no costs or expenses of administration shall be imposed against Lender, its claims or the Post-Petition Collateral.

14. If, in the course of this reorganization proceeding, and contrary to the above provisions, this Court grants liens or security interests to others pursuant to Section 364(d) or any other provision of the Code, which liens or security interests are senior or equal to the liens or security interests of Lender described above, then any proceeds of extensions of credit secured by such senior or equal liens or security interests shall be applied to the Post-Petition Indebtedness of Borrower and Debtor to Lender, including all attorneys' fees, costs and expenses, and Lender shall retain all liens and security interests held by it until all of the Post-Petition Indebtedness is paid in full, unless the consent of Lender is obtained.

15. Debtor shall submit monthly Budgets to Lender for approval on the twentieth day of every month during the term of this Stipulation. Lender shall have until the thirtieth (30th) day of each month to provide Debtor with written objection to any line item contained in the Budget. If no objection is lodged, Lender shall be deemed to have consented to the payment of items set forth in the Budget for each month. If an objection is lodged by Lender, Debtor shall not be permitted to pay the line item objected to until the Lender and the Debtor resolve the issue or upon further order of the Court.

16. Debtor shall use the proceeds of the Post-Petition Indebtedness only for payment of such items set forth in the Budgets to be provided per paragraph 1(a) above within a 10% aggregate variance of the Budget. Payment by Debtor of amounts or expenses other than those specifically set forth in the Budgets (within a 10% variance of each Budget), other than U.S. Trustee fees or expenses and any other expenses approved by the Court that are outside

of the Budget, including the fees or expenses of the Debtor's retained professionals, shall constitute a Default unless Lender consents to those changes in writing. No budget submitted by the Debtor shall be an admission of liability nor constitute the waiver of any fact, claim, or defense of the Debtor nor shall it limit the particular recipients of any expenditure. In accepting the Budgets and by taking any other actions pursuant to this Stipulation, Lender shall not have any liability to any third party and shall not be deemed to be in control of the operations of Debtor or to be acting as a "responsible person" with respect to the operation or management of Debtor.

17. Debtor is authorized to use cash collateral in accordance with this agreement. To the extent of the Debtor's use of the Pre-Petition Collateral, any creditor holding a valid, enforceable, non-avoidable Junior Lien is hereby granted a replacement lien in the Post-Petition Collateral subordinate to the interest of Lender, and thereafter in and to the same extent, validity and priority as existed prior to the Petition Date; <u>provided</u>, <u>however</u>, that such replacement liens shall be granted only to the extent necessary to replenish the diminution in value as of the Petition Date of Junior Liens and security interest and shall not exceed the amount, priority, validity, perfection or enforceability of such lien positions and rights as of the Petition Date; <u>provided further</u>, that such replacement liens shall not attach to avoidance actions or other actions under Chapter 5 of the Code or any proceeds or recoveries therefrom; <u>provided further</u> that the replacement liens shall not be (i) extend or attach to any lien that is avoided and preserved for the benefit of the Debtor's estate under Section 551 of the Code or (ii) except for senior priming liens that may be granted by the Court for debtor-in-possession financing pursuant to Section 364 of the Code, subordinated to or made *pari passu* with any other lien under Sections 363 and 364 of the Code.

18. Debtor may, without further order of the Court, be directed by Lender to, or Lender may directly, instruct all account Debtor of existing and future accounts (whether included in the Pre-Petition or Post-Petition Collateral) to make payments directly to Lender or such lock box or depository account as Lender may designate, and, as hereinabove provided, such proceeds shall be available for application by Lender against the Pre-Petition and Post-Petition Indebtedness of Borrower and Debtor to Lender. In the event Debtor at any time receive any payments from the sale or disposition of proceeds of accounts or other Pre-Petition Collateral or Post-Petition Collateral, such payments and/or proceeds shall be immediately remitted to Lender.

19. Immediately upon the entry of an order authorizing Debtor to enter into this agreement, Debtor shall account to Lender for all cash, checks, notes, drafts, instruments, acceptances or other property representing cash or other proceeds of Pre-Petition Collateral in Borrower's or Debtor's possession or control. All cash, checks, notes, drafts, instruments, acceptances and other property in the nature of items of payment representing proceeds of property and interests in property of both Borrower and Debtor (collectively, "<u>Cash Proceeds</u>") currently in the possession of Debtor or in any accounts in financial institutions, including any lock box or depository accounts, shall be deemed proceeds of the Pre-Petition Collateral. Upon entry of an order hereon, Debtor shall deliver said proceeds and all other proceeds of the Pre-

Petition Collateral to Lender for application to the Pre-Petition Indebtedness, except to the extent Lender otherwise agrees in writing. All hereafter arising Cash Proceeds shall be paid to Lender in accordance with the terms of this Stipulation.

20. Agreements by Lender to extend credit to Debtor, and by Debtor to seek financial accommodations from Lender contained herein or in any Post-Petition Loan Document or arising pursuant hereto or otherwise may be terminated by Lender, for cause, at any time upon five (5) business days notice to Debtor c/o its counsel, and by Debtor, without cause, at any time upon five (5) business days notice to Lender c/o its counsel. Agreements by Lender to extend credit to Debtor, and by Debtor to seek financial accommodations from Lender contained herein or in any Post-Petition Document or arising pursuant hereto or otherwise may be terminated by Lender, without cause, at any time upon ninety (90) days notice to Debtor c/o its counsel as set forth above. Upon termination by either party, the Post-Petition Indebtedness, including all accrued and accruing costs and expenses, shall then be immediately due and payable; provided, however, that the obligations and rights of Lender and Debtor with respect to all transactions which have occurred prior to such termination, including without limitation Debtor's obligation to remit, and Lender's right to receive and apply, Cash Proceeds, shall remain unimpaired and unaffected by any such termination and shall survive such termination; and provided further that upon such termination Lender shall be deemed to have retained all of its respective rights and remedies under the Code. The Post-Petition Documents shall automatically be deemed terminated and the Post-Petition Indebtedness shall become immediately due and payable upon termination of this Stipulation or a conversion of this cause under Section 1112 of the Code. If a plan of reorganization is confirmed pursuant to Title 11, then that confirmed plan shall govern the treatment of the liens, payments and other issues embodied in this Stipulation. Exercising any default remedies hereunder shall require an order lifting the automatic stay.

21. Any one or more of the following shall constitute an event of default entitling Lender to terminate this Stipulation for cause: (a) any Debtor commits any Event of Default under the Pre-Petition Loan Documents (other than the provisions relating to insolvency or bankruptcy); (b) any Debtor fails to perform any of its obligations in strict accordance with the terms of this Stipulation; (c) intentionally deleted; (d) any representation or warranty made by any Debtor in any certificate, report or financial statement delivered to the Lender proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (e) the chapter 11 Bankruptcy Case is converted to a case under chapter 7 of the Code; or (f) a Trustee is appointed or elected in the Bankruptcy Case, or an examiner with the power to operate the Debtor's business is appointed in the Bankruptcy Case. Lender shall have the exclusive right to waive any Event of Default.

22. The Debtor shall without further order of this Court, reimburse Lender for all filing and recording fees and the reasonable attorneys' fees incurred by Lender in connection with the Post-Petition Indebtedness and the handling of the Bankruptcy Case and all matters related thereto on a provisional basis. Subject to Lender's discretion, the reimbursement

contemplated hereby may be made by Lender's deducting such amounts from collections as provided in paragraph 11 above or by Lender's adding such amounts to the Post-Petition Indebtedness. Lender, however, shall provide Debtor's counsel with copies of the invoices sent by Lender's counsel to Lender (edited to delete any attorney-client or other confidential information) with respect to the attorneys' fees and related costs and expenses described in this Paragraph. The provisions of this Paragraph shall be without prejudice to the rights of any party with the requisite standing, including but not limited to Debtor, any official committee, and the U.S. Trustee, to object to the reasonableness of any such fees, costs and expenses; provided, however, that any party so objecting shall file and serve upon Lender an objection describing with particularity the items or categories of fees, costs and expenses that are the subject of the objection and providing the specific basis of the objection to each such item or category of fees, costs and expenses; and provided, further, that unless a party with the requisite standing files and serve its respective objection within thirty (30) days of receiving its copy of such invoice, then the objection of such party failing to so file and serve its objection to the fees and expenses set forth on each such invoice shall be forever waived and barred. Any hearing on objections to the fees and expenses of Lender set forth on any invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses which are the subject of such objections. Notwithstanding anything to the contrary contained in this paragraph, all fees and costs incurred by lender shall be subject to entry of an order by the court approving the fees and costs.

23. The signature of those individuals identified above or any other persons authorized by the corporate resolutions referred to above, whether by letter to Lender or appearing on any one or more of the Post-Petition Documents, shall bind Debtor _nunc pro tunc_ as of the date of the filing of the Petitions.

24. Debtor hereby is required to deliver to Lender such financial and other information concerning the business, collateral and affairs of Debtor as required pursuant to the Pre-Petition Loan Documents and as Lender shall reasonably request from time to time hereafter.

25. This Stipulation is further subject to the delivery to Lender of evidence, satisfactory to Lender's counsel, that the Pre-Petition Collateral and the Post-Petition Collateral are insured for the full replacement value thereof.

26. The provisions of this Stipulation shall be binding upon and inure to the benefit of Lender, Debtor and their respective successors and assigns, including, but not limited to, any Chapter 7 or Chapter 11 Trustee hereinafter appointed as a representative of the estates herein.

27. This Stipulation shall continue until the earlier of confirmation of a plan of reorganization, conversion of this case to a Chapter 7 proceeding, or termination by Lender or Debtor as provided above.

28. To the extent there exists any conflict between the Post-Petition Documents, the Motion or

any other agreements and the terms of this agreement, this Stipulation shall govern.

29. Nothing herein contained shall: (a) affect or impair Lender's right to seek adequate protection of its interests in the Pre-Petition Collateral; (b) be deemed to constitute or constitute a commitment by Lender to continue to make advances to Debtor or to finance Debtor's Chapter 11 proceeding other than as expressly set forth herein; or (c) be deemed to constitute a waiver of any default by Borrowers under the Pre-Petition Loan Documents other than defaults consisting of the filing of the Petition.

30. Notice shall be served within twenty-four hours of entry of an order authorizing Debtor to enter into this Stipulation, by mailing copies of this Stipulation, (excluding Exhibits attached hereto), and the Order authorizing Debtor to enter into this Stipulation, to Lender, all secured creditors, the twenty largest unsecured creditors for each Debtor, the U.S. Trustee, the Internal Revenue Service, and all other creditors who have filed requests to receive notice. If, after the entry of an interim order authorizing Debtor to enter into this agreement, any or all of the provisions of this agreement are modified, vacated or stayed by subsequent order of this or any other Court, such modification, vacation or stay shall not affect the validity of (a) any indebtedness to Lender incurred pursuant to this Stipulation prior to the effective date of such modification, vacation or stay, or (b) the validity and enforceability of any security interest or lien or priority granted hereby with respect to the Pre-Petition and Post-Petition Indebtedness. Moreover, notwithstanding such modification, vacation or stay, any advances of funds, guarantees of letters of credit, use of cash collateral or financial accommodations made pursuant to this Stipulation by Lender prior to the effective date of such modification, vacation or stay, to or for the benefit of Debtor shall be governed in all respects by the original provisions of this agreement and Lender shall be entitled to all the rights, privileges and benefits, including without limitation the security interests, liens and priorities granted herein, with respect to all such advances.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

31. As further new post-petition consideration to the Debtor and its estate, the following persons, each a "<u>Guarantor</u>" agrees to and do hereby guaranty both the Pre-Petition Indebtedness and the Post-Petition Indebtedness of Borrower without any claim for offset, reduction or counterclaim:

Dated this July __, 2010.

By: **Titus Transportation, LP**

_____
, President
Date: _____

And

By: **Marquette Transportation Finance, Inc.**

_____
Its: _____
Date: _____

By: Brent Hagenbuch

_____
As a Guarantor
Date: _____

By: Titus Land, LP

_____
As a Guarantor
Date:_____

By: Titus Properties, LP

_____
As a Guarantor
Date:_____

By: Energy Transport, LLC

_____
As a Guarantor
Date:_____

By: Titus Logistics Services, LP

_____
As a Guarantor
Date:_____

By: Titus Capital, LLC

_____
As a Guarantor

Date:_____

| Consented and Approved as<br>to form and substance:<br><br><br>_____<br>Paul Geilich<br>Texas State Bar No.<br>14755 PRESTON ROAD<br>Suite 600<br>Dallas, Texas 75254<br>Telephone: 972-419-4765<br>Facsimile: 972-702-0662<br><br>*PROPOSED COUNSEL FOR DEBTOR*<br>*AND DEBTOR-IN-POSSESSION* | Consented and Approved as<br>to form and substance:<br><br><br>_____<br>J. Michael Sutherland (#19524200)<br>Prescott W. Smith (#24013534)<br>CARRINGTON, COLEMAN, SLOMAN<br>& BLUMENTHAL, L.L.P.<br>901 Main Street, Suite 5500<br>Dallas, TX 75202<br>Telephone: (214) 855-3000<br>Facsimile: (214) 855-1333<br><br>Thomas J. Lallier (#163041)<br>Jared D. Kemper (#0390427)<br>FOLEY & MANSFIELD, P.L.L.P.<br>250 Marquette Avenue, Suite 1200<br>Minneapolis, MN 55401<br>Telephone: (612) 338-8788<br>Facsimile: (612) 338-8690<br><br>*ATTORNEYS FOR MARQUETTE*<br>*TRANSPORTATION FINANCE, INC.* |

## CERTIFICATE OF CONFERENCE

On , 2010, the undersigned proposed counsel for the Debtor communicated with the Office of the United States Trustee with respect to the underlying dip-financing/cash-collateral motion and relief requested therein, and _____reserved the rights of the United States Trustee pending a review of the Motion; however, the Trustee did not oppose the emergency setting requested for , 2010.

_____

## CERTIFICATE OF SERVICE

The undersigned certifies that, on July 2, 2010, a true and correct copy of the foregoing document (without exhibits, which are available upon request) was served by facsimile and email where known, and by first-class mail, postage prepaid, on the Office of the United States Trustee, each of the Debtor's twenty (20) largest unsecured creditors, the Debtor's secured lenders, and all other parties-in-interest set forth in the attached service list. The undersigned further certifies transmittal of the foregoing document to the Office of the United States Trustee pursuant to Fed. R. Bankr. P. 9034.

_____

*In re Titus Transportation, LP*
*Case No.*

GE Capital T.I.P.
75 Remittance Drive
Chicago, IL 60675

GE Transportation Finance
P.O. Box 822108
Philadelphia, PA 19182

Key Equipment Finance
- Payment Processing
P.O. Box 74713
Cleveland, OH 44194

Lease Corporation of America
3150 Livernois
Troy, MI 48083

MHC Financial Services, Inc.
P.O. Box 412582
Kansas City, MO 64141

Navistar Financial Corp.
P.O. Box 96070
Chicago, IL 60693

PACCAR Financial Corp.
P.O. Box 676014
Dallas, TX 75267

Superior Trailer Sales
501 Hwy 80 East
Sunnyvale, TX 75182

Trans Lease, Inc.
4475 E. 7th Ave., Suite 103
Commerce City, CO 80022

Wells Fargo Equipment Service
NW-8178
Minneapolis, MN 55485

James and May Browne
9325 Grandview
Denton, TX 76207

Blue Cross Blue Shield
Attn: Customer Service
P.O. 66049
Dallas, TX 75266

Comdata
P.O. Box 548
Brentwood, TN 37024

Xtra Lease
P.O. Box 99262
Chicago, IL 60693

Cline Wood Agency, Inc.
1900 Ballpark Way
Suite 108
Arlington, TX 76006

T Check Systems, Inc.
SDS 12-1039
P.O. Box 86
Minneapolis, MN 55486

Strasburger & Price, LLP
P.O. Box 50100
Dallas, TX 75250

Bowman Sales & Equipment, Inc.
P.O. Box 433
Williamsport, MD 27195

Michelin North America, Inc.
P.O. Box 100860
Atlanta, GA 30384

Pro Tire
3009 Windy Hill
Denton, TX 76209

Pilot Travel Centers
5508 Lonas Drive
P.O. Box 10146
Knoxville, TN 37939

PLM Leasing
14095 Collections Center Drive
Chicago, IL 60693

Premier Trailer Leasing
991 Rt. 22 West
Bridgewater, NJ 08807

Bridgestone Bandag, LLC
P.O. Box 92090
Chicago, IL 60675

Premium Financing Specialists, Inc.
22343 Network Place
Chicago, IL 60673

Premium Assignment Corporation
P.O. Box 3100
Tallahassee, FL 32315

Tatum, LLC
303 Peachtree Street NE
SunTrust Plaza, Suite 4400
Atlanta, GA 30308

PrePass
23566 Network Place
Chicago, IL 60673

Denton Truckport
5949 Sherry Lane
Suite 750
Dallas, TX 76202

Denton County Tax Assessor's Office
P.O. Box 90204
Denton, TX 76202

Securities and Exchange Commission
100 F. Street NE
Washington, DC 20549

RREC Denton Truckport, LLC
5949 Sherry Lane
Dallas, TX 76202

United States Trustee's Office
110 North College Avenue
Suite 300
Tyler, TX 75702-7231

Internal Revenue Service
IRS Special Procedures - Insolvency
P.O. Box 21126
Philadelphia, PA 19114

State Comptroller of Public Accts.
Revenue Acct. Division - Bankruptcy
P.O. Box 13528
Austin, TX 78711